IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Jacobs,<br><br>            Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>            Respondents. | No. CV-18-01628-PHX-JGZ<br><br>**ORDER** |

      Pending before the Court is Petitioner Danny Jacobs's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In his Petition, Jacobs asserts three grounds: (1) trial counsel was ineffective, in violation of the Sixth Amendment; (2) the trial court violated Jacob's Fifth Amendment rights when it denied his motion for a directed verdict; and (3) the trial court violated Jacob's Fifth Amendment rights when it rejected his proposed jury instruction. (Doc. 1 at 62-65.) Evidence was heard as to Ground One. The Magistrate Judge issued a Report and Recommendation recommending dismissal of Grounds Two and Three.  For the following reasons, the Court will dismiss Grounds Two and Three, deny Ground One, and dismiss the Petition.

    **I.**    **Background**

     On May 2, 2014, Petitioner Jacobs was convicted by jury of kidnapping and assault. (Doc. 1 at 1-2.) He was sentenced to ten years' imprisonment for the kidnapping offense and time served for the assault. (Doc. 36 at 5.)

//

### A. Direct Appeal

Jacobs sought direct review of his conviction in the Arizona Court of Appeals, where he asserted the trial court improperly (1) denied his motion for directed verdict, and (2) refused to give his proposed jury instruction clarifying the definition of "human shield," a term used in the kidnapping charge. (*Id.*) By Memorandum Decision dated November 19, 2015, the Arizona Court of Appeals affirmed Jacobs's convictions and sentence. (*Id.*)

### B. Post-Conviction Relief

Jacobs sought post-conviction relief (PCR) pursuant to Arizona Rule of Criminal Procedure 32. (Doc. 8-2 at 11.) Jacobs filed a PCR notice on December 21, 2015 and, in a subsequently filed petition, alleged ineffective assistance of counsel in plea negotiations. (Doc. 36 at 5.) Jacobs asserted that he would have accepted a plea offer if his trial counsel had correctly advised him. (*Id.*) The Superior Court dismissed Jacobs's PCR claim, finding that he had "failed to state a colorable claim" and that "no purpose would be served by further proceedings." (*Id.* at 6.)

Jacobs sought further review in the Arizona Court of Appeals. He argued that the trial court "abused its discretion by summarily dismissing his colorable claim without providing an evident[iary] hearing and without making findings." (*Id.* at 6.) On December 12, 2017, the Arizona Court of Appeals granted review but denied relief, concluding that the trial court had not abused its discretion. (*Id.*) Jacobs then filed a petition for review in the Arizona Supreme Court, which denied review on April 30, 2018. (Doc. 8-2 at 244.)

### C. Habeas Petition

On May 23, 2018, Jacobs timely filed in this Court the pending Petition for habeas corpus pursuant to 28 U.S.C. § 2254, asserting three grounds for relief. (Doc. 36 at 6.)

## II.     Legal Analysis

### A. Ground One

In Ground One, Jacobs alleges trial counsel was ineffective, in violation of the Sixth Amendment, when he advised Jacobs not to take the state's plea offer. (Doc. 1 at 62-63.) Jacobs claims the poor advice caused "the loss of a beneficial plea of 8 months, and a

needless prison sentence [of] 10 years." (*Id.* at 62.) Jacobs asserts he would have accepted the February 2014 plea offer, had his attorney not advised that the jury would acquit Jacobs "based on sympathy." (Doc. 26 at 5.) [1]

On January 14, 2021, the Court determined that Jacobs was entitled to an evidentiary hearing on his Ground One claim (*Id.* at 6-7), and an evidentiary hearing was scheduled. The parties subsequently requested that the Court vacate the evidentiary hearing and allow them to present evidence by affidavits. (Doc. 33 at 1-2.)  The Court granted the motion and the parties submitted video depositions of Petitioner and his state court counsel W. Michael Atkins, as well as additional briefing for a determination of Ground One on the merits. (Docs. 47, 49.)

Having reviewed the video depositions, the Court concludes that Jacobs fails to establish that his counsel's performance was deficient.

### 1. Evidentiary Findings

The Court finds that Jacobs's trial counsel did not advise Jacobs to proceed to trial or that the jury would acquit him based on sympathy. The Court finds that Jacobs's testimony, that he did not accept the plea offers because of such advice, is not credible. The Court further finds that Jacobs's attorney advised him to take the plea offers.  The Court makes the following findings in support of these conclusions.

### a. Jacobs's trial counsel

W. Michael Atkins has been a criminal defense attorney since 2006. (Doc. 44-2 at 5.)  He has represented thousands of defendants. (*Id*. at 6.) He has never been the subject of a disciplinary action. (*Id*.) He testified that his approach in discussing plea offers with a

---

[1] The Court previously found that the state court record provided a reasonable basis for the state court's rejection of Jacobs's additional claim that he would have accepted the state's plea offer but for his attorney's advice that the state would dismiss the case if the victim did not testify. (Doc. 26 at 4-5.) The transcript of the settlement conference shows that Jacobs was fully informed that even if the victim refused to testify, the state could and would proceed against him on the kidnapping charge, and that would expose Jacobs to a minimum sentence of 10 years' imprisonment. Jacobs rejected two favorable plea offers after having been fully informed about the state's proof and intent to proceed without the victim's testimony, as well as the likely sentence he would receive if he did not prevail at trial.  There is no basis in the record to support his claim that, but for the ineffective advice of counsel about the necessity of the victim's testimony, there is a reasonable probability that he would have accepted the plea offer. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Because the state court decision is supported by the record and because the record undercuts this allegation, Jacobs cannot prevail as to this allegation of ineffective assistance.

- 3 -

client is to first explain the charges and go over the elements of the charges. (*Id*.) Then he discusses the facts of the case and how the facts can be applied to the elements. (*Id*.) He next discusses exactly what the client's exposure would be. (*Id*.) Then, he discusses the plea offer itself. (*Id*.) Finally, he discusses whether the plea would benefit the client versus what the client would face if the case went to trial. (*Id*. at 6-7.) He generally recommends whether his clients should accept a plea offer, and thinks that an attorney should make a recommendation as attorneys are more apt to understand the risks of acceptance. (*Id*. at 7)

Atkins credibly testified that he remembered having multiple discussion with Jacobs about plea offers made in Jacobs's case. (*Id*. at 8.) He recalled the first plea offer included probation with some jail time, and that he went back to the prosecutor and got a better offer involving less jail time. (*Id*.) He recalled that the terms of the offers were detailed in settlement conferences with the prosecutor and judge. (*Id*.) Atkins testified that his recollection was that Jacobs's attitude toward the plea offer was that "he wanted to get out of jail as quickly as possible" and "get back to his daughter," and that the plea offer "required him to spend additional time" in custody. (*Id.* at 9.)

Atkins's recollection about the government's plea offers and Jacobs's concern about accepting the first plea offer is consistent with state court records. The transcript of the February 26, 2014 settlement conference shows that the parties discussed the state's first plea offer, which required Jacobs to plead guilty to attempted kidnapping and he would be eligible for probation after he served an initial non-deferred jail term of one-year flat with no credit for time served. (Doc. 8-1 at 16-17). In response to the prosecutor's description of the offer, Jacobs repeatedly said that he did not want a felony and was trying to "remain a father" to his daughter. (*Id*. at 12.)

The record of a hearing the morning before trial shows the prosecutor reporting that Jacobs's attorney had persuaded her to give Jacobs a more favorable plea offer. (*Id*. at 42-44.) This second plea offer would credit Jacobs for four months of the time he had served; thus, the plea would require Jacobs to serve only eight months in jail. (*Id.*) After the judge explained Jacobs's options including the potential ten-year minimum sentence, Jacobs,

without consulting with counsel, indicated that he was rejecting the plea offer and would proceed to trial.  (*Id*. at 44.)

Atkins credibly testified that he believed he told Jacobs to take the first plea offer when they first had the offer. (Doc. 44-2 at 10, 23.)  And when the prosecutor came back and offered less jail, Atkins believed Jacobs should have taken that plea. (*Id*. at 10.) When asked whether he advised Jacobs that he should not take the plea offer, but instead go to trial because the jury would find him sympathetic, Atkins responded, "No. I wouldn't do that.  That – that doesn't make sense."  (*Id*.)  Indeed, Atkins testified that he would never tell a client not to take a plea because a jury would be sympathetic to them.  (*Id*. at 7-8.)

### b.  Jacobs's testimony

Jacobs's testimony does not establish that Atkins advised him to reject the plea offer because he would be acquitted by a sympathetic jury. Jacobs did not testify that Atkins advised Jacobs to reject the plea offers, nor did he testify that Atkins told Jacobs he would be acquitted based on sympathy.  In his deposition, Jacobs explained how he surmised that is what Atkins was saying.  But his conclusion is not objectively reasonable, and it cannot provide a basis from which this Court could find that Atkins advised Jacobs to reject the state's plea offers and go to trial.

Jacobs testified that a plea offer was first conveyed to him at the February 2014 settlement conference, and he was given 24 hours to consider the offer. (Doc. 44-1 at 11-12.) The following day he spoke with Atkins about the offer and Jacobs was distraught. (*Id*. at 12.) He asked Atkins, "as a man, as a father, . . . do you think that I did this?  Do you think that I used my daughter as a hostage shield for ransom?" (*Id.* at 12-13.) And he told Atkins, "if you tell me that I did this, that I committed this crime, you know, I would sign this.  I'll sign it right now." (*Id*. at 13; *see also id.* at 22.)  Jacobs testified that Atkins looked down and replied, "man, no, I don't think you did this crime. I don't think you had the intent to use your daughter as a hostage shield for ransom." (*Id*. at 13.)  From Atkins's response, Jacobs believed that Atkins was saying it was lawful for Jacobs not to give his daughter to police. (*Id*.) According to Jacobs, Atkins also said, "I feel that . . a jury or a

- 5 -

human or a jury would have sympathy for you as a father, you know, giving your child to people with guns, you know, strangers with guns . . . ." (*Id.*) And, from that point on, Jacobs felt like he didn't commit the crime. (*Id.*)

The Court cannot conclude from Jacobs's testimony that Atkins advised Jacobs to reject the plea offers or that he would be acquitted. Maybe Jacobs believed that's what Atkins was saying; Jacobs testified that he was suffering many mental issues, and was very emotional at that time. (*Id.* at 12, 17-18.) But the interpretation is not objectively reasonable. And Jacobs is not always consistent in his reporting. For example, in his petition for post-conviction relief, Jacobs wrote that Atkins's performance was deficient because "counsel failed . . . to review the statutory elements of the criminal charges." (Doc. 8-2 at 4.) Yet Jacobs testified at deposition that Atkins had "described each of those crimes to me in detail" and "the main things they would have to prove in order for me to be convicted of kidnapping." (Doc. 44-1 at 14.)

Although the Court finds no direct evidence that Atkins told Jacobs he would be acquitted of kidnapping because the jury would sympathize with him, the Court acknowledges that Jacobs did respond "yes" in two instances to leading questions, lacking foundation, that suggested that Atkins had so advised. Petitioner's counsel first asked Jacobs: "So because Mr. Atkins told you that it wasn't illegal for you not to give your daughter to the police, *he felt* that the jury would acquit you of the kidnapping charge because they would sympathize with you as a father in that situation; is that right? (*Id.* at 13 (emphasis added).) And second, at the end of the deposition, Petitioner's counsel asked Jacobs:

> Q: So, Mr. Jacobs, just to follow up, did Mr. Atkins lead you to believe that the prosecution would not be able to prove the elements of the crime?
>
> A: Yes. Completely.
>
> Q: And he led you to believe that because he told you that it's not illegal for you not to give your daughter to the police or people with guns;

- 6 -

|   |   |
|---|---|
|   | right? |
| A: | Yes. |
| Q: | And he told you that because he intended to argue to the jury that fact in order to persuade them to…acquit you out of sympathy for your…status as a father; is that right? |
| A: | Yes. |

(*Id.* at 26-27.)

The Court does not credit Jacobs's affirmative responses to these questions. The first question lacked foundation for its assertion that Atkins "felt the jury would acquit [Jacobs]." Neither Atkins nor Jacobs testified that Atkins said that he felt the jury would acquit Jacobs based on sympathy. In addition, Jacobs's belief about what Atkins might have felt is irrelevant and purely speculative. Similarly, the second set of questions does not establish that Atkins told Jacobs he was innocent and a jury would acquit him. Inquiring whether "Atkins le[]d [Jacobs] to believe" various things elicits only Jacobs's interpretation of Atkins's statements and Atkins's motives, not Atkins's actual advice to Jacobs. As discussed above, it was not objectively reasonable for Jacobs to conclude that Atkins was advising Jacobs to reject the plea offers and go to trial. Notably, counsel's questions and Jacobs's responses do not logically support the contention that Atkins planned to defend the case by appealing to the jury's sympathy: Atkins would not need to persuade the jury to acquit Jacobs out of sympathy if Atkins believed that the "prosecution would not be able to prove the elements of the crime," or that what Jacobs did was not illegal. In sum, Jacobs's responses to these leading questions only establishes Jacobs's erroneous interpretation of Atkins's statements.

### 2. Merits

To prove ineffective assistance of counsel, a defendant must demonstrate the representation (1) failed to meet an "objective standard of reasonableness" and (2) but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). *Strickland*' s two-prong test applies to

ineffectiveness claims arising from the plea process. *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002) (citing *Hill v. Lockhart,* 474 U.S. 52, 57–58 (1985)). The first prong requires a defendant to show that counsel's advice did not fall within the range of competence demanded of attorneys in criminal cases. *Id.* (internal citations omitted). Advice is not within the range of competence if it constitutes "gross error on the part of counsel" or is "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." *Id.* at 880 (internal citations omitted). The second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* To prove the second prong, a defendant must show that absent this advice he would have accepted the plea offer. *Missouri v. Fry*, 566 U.S. 134, 145-46 (2012).   Here, the Court concludes that Jacobs fails to establish either prong.  The Court finds that Atkins did not advise Jacobs to reject the plea offers, or tell Jacobs he would be acquitted based on sympathy.  Thus, counsel's performance was not deficient and did not undermine Jacobs's ability to make an intelligent decision about the plea offer.  It follows that Jacobs also cannot show that Atkins's performance affected the plea process outcome.

The Court further finds that Jacobs has failed to establish that Atkins's statements, that a jury would be sympathetic to Jacobs's paternal desire to keep police away from his daughter and that Atkins did not believe Jacobs intended to use his child as a shield, constitute gross error.  First, these statements would not undermine Jacobs's ability to evaluate the plea offers.  Neither statement is a comment on the plea agreement or Jacobs's chances at trial, and the record shows that Jacobs was repeatedly advised that if he did not prevail at trial, the court would have no choice but to impose a ten-year minimum sentence. Second, if Jacobs elected to go to trial, it would not be gross error for Atkins to pursue a trial strategy of presenting Jacobs as a sympathetic, caring father.

For all of the above reasons, Jacobs's Ground One claim for ineffective assistance of counsel will be denied.

//

### B. Grounds Two and Three

In Ground Two, Jacobs alleges that the trial court violated the Fifth Amendment when it denied his motion for a directed verdict, against the weight of the evidence. (Doc. 1 at 63-65.) In Ground Three, Jacobs alleges that the trial court violated Jacobs's Fifth Amendment rights by not giving Jacobs's proposed jury instruction for the definition of a "human shield" with respect to the kidnapping charge. (*Id.*)

On August 10, 2021, United States Magistrate Judge Jacqueline M. Rateau filed a Report and Recommendation (R&R) recommending dismissal of Grounds Two and Three. (Doc 36.) Magistrate Judge Rateau concluded that Grounds Two and Three were unexhausted and procedurally defaulted because Jacobs did not fairly present federal claims to the state court in Grounds Two and Three and the claims would now be time barred under Arizona Rules of Criminal Procedure Rules 32.2(a)(3) and 32.4(a)(2). (Doc. 36 at 6, 8-9.)

On August 18, 2021, Jacobs timely filed an Objection to the R&R as to Ground Two only. (Doc. 39.) The State filed a Response to the Objection on August 27, 2021. (Doc. 42.)

### 1. Standard of Review

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original). District courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Further, a party is not entitled as of right to *de novo* review of evidence or arguments that are raised for the first time in an objection to the report and recommendation, and the Court's decision to consider newly-raised arguments is discretionary. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*,

231 F.3d 615, 621-22 (9th Cir. 2000).

### 2. Discussion

After independent review of the parties' briefing and the record, this Court will adopt Magistrate Judge Rateau's recommendations and dismiss Grounds Two and Three of the Petition.

### a. Ground Two

Jacobs objects to Magistrate Judge Rateau's conclusion that he did not fairly present his Ground Two federal due process claim to the state courts. (Doc. 39 at 1-2.) Jacobs argues that the claim was fairly presented because (1) he cited a state court case that relied on the federal Constitution in his appeals court petition, and (2) the court of appeals's decision relied on a state court case citing the federal standard. (*Id.*) The Court concludes that Jacobs did not fairly present his Ground Two claim to the state court, and that he is now time-barred from doing so under Arizona law.

The Court cannot grant habeas relief under AEDPA if the petitioner failed to exhaust his claim in state court. 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 838-39 (1999). Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims. *See O'Sullivan*, 526 U.S. at 844. "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Then, the petitioner must present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999). A state prisoner must not only present the claims to the proper court, but must also present them fairly. A petitioner fairly presents federal claims only if he alerted the state court that his claims rested on the federal Constitution. *Fields v. Waddington*, 401 F.3d 1018, 1020-21 (9th Cir. 2005) (citation omitted). "In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Id.* (citations omitted); *see also Peterson v.*

*Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) ("a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue").

Jacobs did not fairly present his federal due process claim in his filings in the Arizona Court of Appeals. Jacobs did not reference "provisions of the federal Constitution," or cite any federal cases which would have alerted the state court that he was asserting a federal claim. *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005). Jacobs's citation to *State v. Mathers*, 165 Ariz. 64, 66-67 (1990), in his direct-appeal brief, was insufficient to alert the court that Jacobs was attempting to present a federal claim. (Doc. 8-1 at 74-75.) Although *Mathers* referenced federal law, the case did not apply federal law to determine a federal claim or to analyze a federal constitutional issue.

In *Mathers*, the Arizona Supreme Court addressed one "dispositive" issue: whether the trial court erred in denying Mathers's Rule 20 motion for judgment of acquittal made at the close of the prosecution's case. *Mathers*, 165 Ariz. at 65. Rule 20 of the Arizona Rules of Criminal Procedure is a state rule. The rule required the trial court to "enter a judgment of acquittal of one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a conviction." *Id.* at 66 (citing Ariz. Crim. Pro. R. 20). The *Mathers* court's reference to *Jackson v. Virginia,* 443 U.S. 307 (1979), and the federal reasonable doubt standard, was tangential to the court's analysis of what "substantial evidence" was necessary to satisfy the requirements of Rule 20. As the sole issue under consideration by the *Mathers* court was the interpretation of a state rule—the same issue Jacobs was presenting to the court in his appeal, Jacobs's reference to *Mathers* would not have alerted the Arizona Court of Appeals of Jacobs's purported federal due process claim. Fair presentation requires more than "drive-by citation…detached of any articulation of an underlying legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1002-03 (9th Cir. 2005). The Court is also not persuaded by Jacobs's argument that the Arizona Court of Appeals

considered and rejected his federal claim as evidenced by its citation to a state court decision which relied on federal law. (Doc. 39 at 2.) In addressing Jacobs's claim that the trial court should have granted him a directed verdict pursuant to Rule 20 of the Arizona Rules of Criminal Procedure, the appeals court cited *State v. West*, 226 Ariz. 559 (Ariz. 2011), which in turn cited *Mathers*, which, as described above, quoted *Jackson v. Virginia*, 443 U.S. 307 (1979). The *West* court, like the *Mathers* court, was presented with one issue of state law; the *West* court determined "whether the same standard governs a trial court's rulings on pre-verdict and post-verdict motions for judgment of acquittal under Arizona Rule of Criminal Procedure 20." *West*, 226 Ariz. at 560. And the *West* court cited to *Jackson* only when discussing the *Mathers* decision and then, only to indicate that the *Mathers* court was quoting *Jackson*. *Id.* at 562-63. Under these circumstances, the court of appeals' citation to *West* does not indicate that the court considered Jacobs's claim to be a federal constitutional claim or that its decision rested on the federal Constitution.

Because Jacobs failed to fairly present a federal due process claim to the state court of appeals and the time for doing so has passed, the claim is procedurally defaulted. Accordingly, the Court will dismiss Jacobs's Ground Two claim.

### b. Ground Three

Jacobs did not file an objection to Judge Rateau's findings and recommendation that Ground Three be dismissed, and the time to file objections has expired. As such, the Court will not consider any objections or new evidence and will adopt the Magistrate Judge's recommendation as to Ground Three.

## III. Certificate of Appealability

A certificate of appealability issues when Petitioner "has made a substantial showing of a constitutional right." 28 U.S.C. § 2253 (c)(2). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying these standards, the Court agrees with and will adopt Magistrate Judge Rateau's recommendation that the Court deny a

certificate of appealability (COA) as to Grounds Two and Three. The Court also concludes that a certificate of appealability should not issue as to Ground One. The Court finds that resolution of the petition is not debatable among reasonable jurists.

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 36) is **ADOPTED.**

**IT IS FURTHER ORDERED** that Grounds Two and Three of the Petition are **DISMISSED** and Ground One is **DENIED**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

Dated this 28th day of September, 2021

_____
Honorable Jennifer G. Zipps
United States District Judge